UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES FOR USE AND BENEFIT OF SEQUOIA ELECTRIC, LLC and SEQUOIA ELECTIC, LLC, <br><br> Plaintiff(s), <br><br> v. <br><br> THE GUARANTEE COMPANY OF NORTH AMERICA USA, <br><br> Defendant(s). | Case No. 2:14-CV-2045 JCM (VCF) <br><br> ORDER |

Presently before the court is defendant The Guarantee Company of North America USA ("GCNA") motion for summary judgment. (ECF No. 47). Plaintiff Sequoia Electric, LLC ("Sequoia") filed a response (ECF No. 53), to which defendant replied (ECF No. 57).

Also before the court is defendant's stipulation to extend time to file a reply in support of its motion for summary judgment. (ECF No. 54).

I.  **Facts**

This suit relates to defendant's bond obligations to plaintiff, a subcontractor who worked on the "Kyle Canyon Picnic Area Reconstruction Project." (ECF No. 1 at 3). Plaintiff claims that general contractor Barajas & Associates, Inc. ("Barajas") acquired a Miller Act payment bond from GCNA. *Id.* The subcontract between plaintiff and Barajas was initially for $183,746.20. (ECF No. 53). Plaintiff and Barajas approved a change order (#1) for $60,500, which meant the total amount payable to plaintiff under the contract was $244,246.20. *Id.*

Plaintiff completed the majority of its deliverables under the subcontract by July of 2013, with the exception of running certain electrical wires and energizing the electrical system. *Id.*

**James C. Mahan**
**U.S. District Judge**

Between July and October of 2013, a fire, government furloughs, and flooding stalled work on the project. *Id.* The flooding caused damage to work already performed by plaintiff. *Id.* Plaintiff resumed work on the project in November of 2013, and completed its work by December 17, 2013. *Id.* Barajas and GCNA combined to pay defendant $244,246.20 based on the original contract and change order #1. (ECF No. 47).

On November 11, 2013, plaintiff submitted a request for extra costs to Barajas. (ECF No. 53). Barajas agreed to a request a change on behalf of plaintiff from the U.S. Forest Service ("the Forest Service") on January 20, 2014 for the first three line items (remobilization, the bollard work referenced in change order #2 and the retrenching addressed in change order #3). (ECF No. 57-2). Barajas's division manager for construction (Richard Cross) stated in his deposition that he did not include the additional line items in the request for modification because there was a dispute as to who should bear the costs of flood damage. (ECF No. 53-2).

On January 28, 2014, the Forest Service denied the change request. (ECF No. 57-2). The Forest Service cited Barajas's failure to timely request the changes pursuant to FAR 52.243-4. *Id.*

On April 18, 2014, plaintiff filed 13 change orders that are the subject of the instant litigation. Change order #2 related to bollard installation, and plaintiff completed this work on or before May 16, 2013. (ECF No. 47-7 at 13–17). Change order #3 related to rerouting NV Energy conduits because of the relocation of an energy transformer, and plaintiff completed this work on or before May 10, 2013. *Id.* at 18–19; (ECF No. 57-1). The other change orders relate to work performed in November of 2013. (ECF No. 47-7). Defendant refused to pay plaintiff based on the change orders, and plaintiff brought the instant action to recover payments allegedly due pursuant to the payment bond. (ECF No. 1).

**II.     Legal Standard**

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is

**James C. Mahan
U.S. District Judge**

"to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

**III. Discussion**

As an initial matter, the court will deny as moot defendant's stipulation to extend time to file a reply in support of its motion for summary judgment (ECF No. 54). Defendant filed a second stipulation to extend time (ECF No. 55), which the court granted (ECF No. 56). Accordingly, plaintiff's first stipulation is moot.

    *a. Sequoia's federal Miller Act claim and state law contractual claim*

Sequoia's first two causes of action request payment from defendant pursuant to the Miller Act and pursuant to state contract law. (ECF No. 1). Defendant and Barajas combined to pay Sequoia in full for the original amount of the contract ($183,746.20) and change order #1 ($60,500).[1] (ECF No. 47). Sequoia asserts that the payment bond requires defendant to reimburse plaintiff for change orders 2-14. (ECF Nos. 1, 53).

SP 31 of the subcontract agreement authorizes changes to the scope of work covered by the contract via four alternative methods:

1. A written change notice from Barajas to Sequoia
2. An oral order from Barajas to Sequoia in the event of a qualifying emergency
3. A written bilateral modification
4. A change notice request from Sequoia, submitted within ten (10) days of discovery of an act or omission by Barajas that gives rise to the change.

---

[1] Sequoia does not dispute this statement.

**James C. Mahan
U.S. District Judge**

- 4 -

(ECF No. 47-1).

The contract contains a flow-down clause that incorporates certain federal regulations. One such regulation is FAR 52.243-4, which governs contract changes and requires contractors to assert rights to adjustments within 30 days.[2]

Sequoia does not allege that Barajas entered into a written agreement to modify the contract. Sequoia instead argues that Sequoia submitted a valid change request and that the contract should be equitably modified pursuant to SP31. (ECF No. 53 at 15).

Sequoia did not submit valid change requests within the contractually-required time frame. *See* (ECF No. 47-1). Sequoia issued its change orders four months after completion of the project. The change orders request payment for work completed as far back as April of 2013. (ECF No. 47-7). Sequoia's requests were made well outside the contractual ten-day requirement for submitting written change notice requests. *See* (ECF No. 47-1).

Sequoia's late change orders prejudiced defendant. Incorporation of the flow-down clause into the contract between the parties demonstrates that plaintiff was constructively aware of the importance of submitting timely change requests. *See* (ECF No. 47-1). Due to plaintiff's delay in submitting change requests, Barajas was unable to obtain a legal right to adjustment from the Forest Service within 30 days. (ECF No. 57-2). Plaintiff's delay precludes its ability to assert contractual or equitable grounds to payment from defendant. *See* (ECF No. 47-1).

Sequoia does not present any dispute of material fact barring summary judgment in favor of defendant on Sequoia's federal Miller Act claim and its state law breach of contract claim. The court will grant defendant's motion for summary judgment on these claims.

As the court holds that Sequoia did not submit timely change requests, it will not consider defendant's alternative argument that Sequoia assumed the risk of loss for work damaged by the fire and subsequent flooding.

. . .

---

[2] Defendant asserts that the contractual requirement that Sequoia submit change notice requests to Barajas within 10 days was meant to ensure that Barajas could in turn comply with the 30-day timeframe required by FAR 52.243-4 to submit contract changes to the Forest Service. (ECF No. 47).

James C. Mahan
U.S. District Judge

*b. Sequoia's quasi-contractual claims*

Sequoia's third claim for relief is based on "assumpsit and quantum valebant." (ECF No. 1). "[R]ecovery in quasi contract applies to situations where there is no legal contract but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain but should deliver to another." *Leasepartners Corp. v. Robert L. Brooks Trust Dated Nov. 12, 1975*, 942 P.2d 182, 187 (1997). Here, as the parties executed an express, written contract, plaintiff cannot recover based on a theory of quantum valebant. *See id.*

Sequoia's fourth claim for relief is one for unjust enrichment. "An action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement." *Id.* Here, as the parties executed an express, written contract, plaintiff cannot recover based on a theory of unjust enrichment. *See id.*

Sequoia's fifth claim for relief is one for promissory estoppel. The Nevada Supreme Court recently articulated the elements of promissory estoppel in *Torres v. Nev. Direct Ins. Co*, 353 P.3d 1203, 1209 (2015),

> To establish promissory estoppel four elements must exist: "(1) the party to be estopped must be apprised of the true facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting estoppel has the right to believe it was so intended; (3) the party asserting the estoppel must be ignorant of the true state of facts; (4) he must have relied to his detriment on the conduct of the party to be estopped."

*Id.* (quoting *Pink v. Busch*, 691 P.2d 456-459–60 (1984)). "The promise giving rise to a cause of action for promissory estoppel must be clear and definite, unambiguous as to essential terms, and the promise must be made in a contractual sense." *Id.* (citing 31 C.J.S. *Estoppel and Waiver* § 116 (2008)).

Here, plaintiff's claim is based on the proposition that GCNA assumed completion of the project. However, Barajas saw the project through to completion as the prime contractor. (ECF No. 47-9). The record is devoid of evidence of a communication to plaintiff that defendant would assume completion of the project. Therefore, plaintiff cannot establish that defendant clearly and unambiguously promised plaintiff that defendant would assume completion of the project. *See Torres*, 353 P.3d at 1209.

James C. Mahan
U.S. District Judge

- 6 -

**IV. Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant's motion for summary judgment (ECF No. 47) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that defendant's stipulation for extension of time to file a reply in support of its motion for summary judgment (ECF No. 54) be, and the same hereby is, DENIED as moot.

The clerk shall enter judgment accordingly and close the case.

DATED March 14, 2018.

                                                        UNITED STATES DISTRICT JUDGE